UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------x
HAROLD THOMPSON AND
CLINTON THOMPSON,

              Plaintiffs,

   -against-

DETECTIVE JASON HERNANDEZ,
ET AL

             Defendants.
---------------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 1: 16-cv-1667 (FB)(RER)

*Appearances:*
*For the Plaintiff*:
ALAN D. LEVINE, ESQ.
80-02 Kew Gardens Rd, Suite 307
Kew Gardens, N.Y. 11415

*For the Defendants*:
ZACHARY W. CARTER, ESQ.
Corporation Counsel of the
City of New York
100 Church Street
New York, N.Y. 10007

**BLOCK, Senior District Judge:**

Plaintiffs Harold and Clinton Thompson bring this civil rights action pursuant to 42 U.S.C. § 1983, alleging that they were falsely arrested and unlawfully stopped by defendant Hernandez. Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons stated below, defendants' motion is granted.

**I**

The following facts, which are taken from the Rule 56.1 statements and supporting documentation, are undisputed unless otherwise noted. Where disputed,

1

they are presented in the light most favorable to the plaintiffs. *See, e.g, Federal Ins. Co. v. American Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011).

Plaintiffs Clinton and Harold Thompson are brothers and black males. Defendant Hernandez is a police officer who worked for the New York City Police Department from July 2006 until February 2015. Hernandez's job duties included investigating narcotics related crimes.

On January 15, 2015, Hernandez was on duty in an unmarked police car. On that day, Clinton was sitting inside a stationary blue SUV parked on Springfield Boulevard. Harold, while walking nearby, crossed the street and entered Clinton's car. While sitting in the passenger's seat, Harold reached into his pocket and handed cash to Clinton. Harold soon thereafter exited the car. Hernandez witnessed this transaction and believed that he observed a drug deal. Hernandez then approached Clinton's vehicle, reached through Clinton's window, and took the cash from Clinton's hand. Hernandez told Clinton to exit the vehicle, which Clinton did.

Hernandez testified that he then observed, in plain sight, a plastic straw containing drug residue on the car's floor. Hernandez testified that he determined, based upon his extensive training, that the residue on the straw was drug residue. Hernandez informed Clinton at the scene that a straw laced with narcotics was found in his car. Clinton claims that if a straw was found in his car, it was planted there.

Hernandez arrested both Clinton and Harold for criminal possession of a controlled substance. Clinton and Harold were placed in a police van for many hours before being brought to the police precinct. The criminal charges against the plaintiffs were eventually dismissed. Harold admitted at his deposition that he used cocaine as recently at 2017 and used a straw to sniff cocaine.

The Court held oral argument on March 2, 2020, at which both parties were represented by counsel. Plaintiff argued that the handing of money from Harold to Clinton did not rise to the level of reasonable suspicion and that an allegation of planting evidence is sufficient to raise a genuine issue of fact as to whether there was probable cause to arrest. Defendants argued that the circumstances surrounding the exchange of money entitle Hernandez to qualified immunity. Moreover, defendants argued that caselaw requires more than unsupported allegations of planting evidence to survive a summary judgment motion on the issue of probable cause.

## II.

### A. Procedural Standard

Summary judgment is appropriate when there is no genuine issue of material fact to be tried and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Once the moving party has carried its burden of demonstrating the absence of a genuine issue of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), the opposing party "must come forward with 'specific facts

3

showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).[1]

## B. False Arrest

Defendants move for summary judgment on the false arrest claims because Hernandez had probable cause or is entitled to qualified immunity.

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York Law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1994) (internal citations omitted). In order to prove the elements of false arrest under New York law, a plaintiff must show: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Id*. at 853 (citation omitted).

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." *Id*. at 852 (internal quotation marks and citation omitted). An officer has probable cause to arrest if he "has knowledge of, or reasonably trustworthy information as to, facts and circumstances sufficient to

---

[1] The Court notes that a substantial part of plaintiffs' opposition brief argues that the plaintiffs were stopped and arrested because they are black. However, there is no equal protection claim and the Court does not find these arguments relevant to whether or not Hernandez had reasonable suspicion or probable cause.

provide probable cause to believe that the person arrested has committed any crime." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) (citation omitted).

Under federal law, an officer is entitled to qualified immunity if it was "objectively reasonable" for him to believe that his actions were lawful at the time of the arrest. *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001). "An officer's determination [to arrest] is objectively reasonable if there was 'arguable' probable cause at the time of arrest." *Jenkins v. City of N.Y.*, 478 F.3d 76, 87 (2d Cir. 2007).

Here, the arrest was based on the finding of a straw containing residue in Clinton's car. Clinton claims that the straw was planted by the police, while Hernandez testified that he observed the straw in plain sight.

A false arrest action cannot stand "on the naked accusation by one of the two arrestees that the police 'must have' planted [contraband], where there is no evidence to support that accusation, and no evidence to exclude the other arrestee as the party who might have had actual possession." *Jimenez v. City of N.Y.*, No. 15-cv-3257 (BMC), 2016 WL 1092617, at *1 (E.D.N.Y. Mar. 21, 2016).

While the Second Circuit has yet to address this issue, Judge Cogan in *Jimenez* provides a cogent explanation on how to handle unsupported allegations of planting evidence. His decision is consistent with a plethora of cases in this circuit. *See Apostol v. City of New York*, No. 11-cv-3851, 2014 WL 1271201, at *6 (E.D.N.Y. Mar. 26, 2014) ("Plaintiffs cannot withstand summary judgment by making

5

unsubstantiated, convenient claims–for example, that someone must have planted the [drugs]"); *Bender v. Alvarez*, No. 06-cv-3378, 2009 WL 112716, at *9 (E.D.N.Y. Jan. 16, 2009) ("Plaintiff fails to provide any evidence demonstrating that the evidence was planted in his residence except for his unsupported statement"); *Carlisle v. City of New York*, No. 05-cv-6825, 2007 WL 998729, at *3 (S.D.N.Y. Apr. 2, 2007) ("Although plaintiff alleges that the detectives fabricated and planted evidence, he fails to offer even a scintilla of support for these allegations").

Here, Clinton does not offer concrete evidence, despite discovery being closed, from which a reasonable juror could return a verdict in his favor. It is Clinton's opinion that the police must have planted the straw; however, the law requires Clinton to "come up with something more than a smidgen of circumstantial evidence to show that there was a genuine, not merely possible, basis for a jury to buy his theory." *Jimenez*, 2016 WL 1092617, at *3. Regardless, this Court would not allow Clinton, a lay witness, to testify at trial as to his opinion that the straw was planted. *See Id.* at *4.

Additionally, the circumstantial evidence is to the contrary: Hernandez testified that he saw the straw in plain sight (Hernandez Depo. at 76:19), and announced at the scene that he found the straw in the car, (Defs.' 56.1 at ¶33; Pls.' 56.1 at ¶33). Furthermore, the straw was inventoried at the police station (Defs.' 56.1

at ¶37; Pls.' 56.1 at ¶37). There is no evidence to exclude Harold as the party "who might have had actual possession." *Jimenez*, 2016 WL 1092617, at *1.

Thus, there is no *genuine* issue of fact that allows Clinton's false arrest claim to stand since Hernandez had probable cause to arrest him.

As for Harold, constructive possession principles allowed the officers to conduct his arrest. Under New York Law, there is an automobile presumption, which provides that "[t]he presence of a controlled substance in an automobile, other than a public omnibus, is presumptive evidence of knowing possession thereof by each and every person in the automobile." N.Y. Penal Law § 220.25. This presumption does not apply if the substance was "concealed" by a party. *Id.*

Harold was merely a few feet from the straw. The straw was not found on Clinton's person, but rather in a reachable area for those in the front seats. Moreover, Harold's presence near the substance was not the only basis for his arrest. Hernandez approached the car in the first instance after witnessing a hand-to-hand transaction that, based on his training, made him believe a drug sale occurred. Harold offers no evidence to rebut this presumption. *See People v.* Law, 173 A.D.2d 737, 738 (2d Dept 1991). Thus, there was probable cause to arrest Harold.[2]

---

[2] It is unclear whether plaintiffs allege an unlawful search of their persons or an unlawful search of the car, or neither. The arrests were supported by probable cause, so any search of their persons was a lawful search incident to arrest. As for the car search, a straw was found within the plaintiffs' "grab area." This search of the "grab area" was a lawful search incident to arrest. *See Arizona v. Gant*, 556 U.S. 332, 339

## C. Unlawful Stop

Defendants also move for summary judgment as to the unlawful stop claim because Hernandez had reasonable suspicion or is entitled to qualified immunity.

The Fourth and Fourteenth Amendments protect the right to be free from "unreasonable searches and seizures." U.S. Const. Amend. 4; 14. An officer may conduct a "brief investigatory detention" if the officer has "reasonable suspicion that the person to be detained is committing or has committed a criminal offense." *United States v. Compton*, 830 F.3d 55, 61 (2d Cir. 2016). "The suspicion must derive from specific and articulable facts which, taken together with rational inferences from those facts, provide detaining officers with a particularized and objective basis for suspecting wrongdoing." *Id*. (internal quotations and citations omitted).

It is undisputed that Hernandez observed Harold hand Clinton money in Clinton's vehicle. It is also undisputed that Hernandez observed Harold leave the

---

(2009) ("[A] search incident to arrest may only include the arrestee's person and the area 'within his immediate control . . . mean[ing] the area from within which he might gain possession of a weapon or destructible evidence.").
    Clinton also testified that the police officers searched the entire car. There is no genuine dispute of fact that a straw was found below the driver's seat, *see supra* II.B., and that Hernandez began his search at the driver's seat, Clinton Depo at 65:8-10. Based on these facts, Hernandez was permitted the expand his search as he had probable cause to believe the car contained evidence of criminal activity. *See Gant*, 556 U.S. at 347 (2009) ("[i]f there is probable cause to believe a vehicle contains evidence of criminal activity," the automobile exception "authorizes a search of any area of the vehicle in which the evidence might be found").

vehicle very shortly thereafter, without engaging in conversation which may have indicated to Hernandez that they were brothers.

However, the caselaw is unclear as to whether the circumstances surrounding this transaction rise to the level of reasonable suspicion. *See Anderson v. City of N.Y.*, No. 16-cv-6629, 2017 WL 2729092, at *3 (S.D.N.Y. June 23, 2017) ("Although [the] hand-to-hand transfer of money may have reflected innocent activity, it was consistent with a drug deal. Considering the circumstances of the hand-to-hand transfer, reasonable suspicion supported the [stop]"); *see also U.S. v. Miller*, No. 18-cr-395, 2020 WL 639263, at *7 (E.D.N.Y. Feb. 11, 2020) (observing "two individuals touching hands, without more" is insufficient to establish reasonable suspicion"); *People v. Dubois*, 953 N.Y.S.2d 552(table), 2012 WL 1939973, at *2-3 (Crim. Ct. N.Y. Cty. 2012) (reasonable suspicion exists only when corroborative facts of a drug sale are alleged in addition to a hand-to-hand transaction).

While it is likely that this observation and the circumstances of the transaction rose to the level of reasonable suspicion, it certainly rose to the much lower level of arguable reasonable suspicion. *See Ozga v. Elliot*, 150 F.Supp.3d 178, 189 (D. Conn. 2015) ("[I]f the police conduct a limited investigative detention, they have qualified immunity so long as they had at least *arguable* reasonable suspicion to warrant the limited detention."). As previously stated, Harold entered and left the car quickly, without engaging in conversation with Clinton. Harold also handed Clinton cash and

9

Hernandez, based on his extensive experience with drug arrests, believed that he witnessed a drug transaction. Defs.' 56.1 at ¶16-22; Pls.' 56.1 at ¶16-22.

Keeping in mind that "police officers are often forced to make split-second judgments[ ]in circumstances that are tense, uncertain and rapidly evolving," reasonable officers could disagree as to whether reasonable suspicion existed to stop plaintiffs. *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999); *see also Zieper v. Metzinger,* 474 F.3d 60, 71 (2d Cir. 2007) ("[T]he qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent"). Thus, Hernandez is entitled to qualified immunity for the stops.

### III.   Conclusion

For the foregoing reasons, the motion for summary judgment is GRANTED.[3]

**IT IS SO ORDERED.**

                         _/S/ Frederic Block_____
                         FREDERIC BLOCK
                         Senior United States District Judge

March 5, 2020
Brooklyn, New York

---

[3] Plaintiffs assert state law claims of false arrest and respondeat superior. District courts have supplemental jurisdiction over state-law claims that "form part of the same case or controversy" as other claims over which the court has original jurisdiction. 28 U.S.C. § 1367(a). The Court dismisses the state law false arrest claims, as there was probable cause, and the respondeat superior claims, as all claims against Hernandez have been dismissed. *See supra* II.A; *see also Harsco Corp. v. Segui*, 91 F.3d 337, 339, 349 (2d Cir. 1996) (affirming the dismissal of respondeat superior claims "because the dismissal of their underlying theories of liability eliminated the prospect of vicarious liability").